**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN MEDINA and RAMONA MEDINA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PILE TRUCKING INC., EARL PILE TRUCKING, ALVIN FLYNN, and DOES 1 through 50 inclusive,<br><br>　　　　Defendants. | Case No. CV 11-6329 PJW<br><br>**MEMORANDUM OPINION AND ORDER**<br><br>**(1) IMPOSING SANCTIONS AGAINST DEFENDANTS AND DEFENDANTS' COUNSEL; AND**<br><br>**(2) GRANTING LEAVE TO PLAINTIFFS TO FILE AN APPLICATION FOR FEES AND COSTS** |

　　　Before the Court is an Order to Show Cause ("OSC") why sanctions should not be imposed against defendants Alvin Flynn and Pile Trucking, Inc. ("Defendants") and Defendants' predecessor counsel Barry Synder, Sean Burnett, and Gregory Smith ("Defendants' counsel") for failure to comply with a court order. [Dkt. No. 82.] On July 10, 2012, Defendants and their counsel responded to the OSC.[1] [Dkt. No. 85.] After studying Defendants and their counsel's response,

---

[1] On July 3, 2012, Snyder, Burnett and Smith applied to withdraw as counsel for Defendants, contending that "[i]rreconcilable, unwaivable conflicts have arisen between the defendants that make their interests and trial strategy adverse to one

along with the entire record here, and after due reflection, the Court finds that sanctions are appropriate for the reasons stated below.

## I.

## **PROCEDURAL BACKGROUND**

The instant OSC chiefly evolves from (1) a May 25, 2012 Order of this Court; (2) Defendants and their counsel's objection to that Order; and (3) the Court's ruling on that objection. For the requisite context, all three are discussed in order.

First, on May 25, 2012, the Court issued an Order sanctioning Defendants and Defendants' counsel. By way of background, the Court ordered Defendants and Defendants' lead counsel to be present for a (further) settlement conference on May 10, 2012. [Dkt. No. 26.] The Court instructed that attendance was mandatory and that failure to comply would result in sanctions. None of the Defendants appeared for that settlement conference. Defendants' lead counsel also failed to appear. Defendants' counsel acknowledged their violation of the Court's Order, including the failure of Defendants to appear as ordered. [Dkt. No. 67.]

The Court sanctioned each Defendant and each of Defendants' counsel and granted leave to Plaintiffs to seek their recoupment of the fees and costs incurred for attending the settlement conference at issue. [Dkt. No. 41.] The Court's bases for its sanctions are described in detail in that Order, and the parties are referred to that Order for a complete history.

Second, on June 8, 2012, Defendants and Defendants' counsel filed an objection to this Court's May 25th Order. [Dkt. No. 58.] Defendants and their counsel contended that, procedurally, sanctions were "outside the magistrate's authority" and, substantively, "there was, in any event, no sanctionable conduct." [*Id.*]

---

another." [Dkt. No. 81.] The Court granted their application to withdraw on July 10, 2012.

1   With respect to "no sanctionable conduct," Defendants and their counsel advanced three arguments: (1) "it is custom and practice in personal injury cases that the presence of a defendant's insurance carrier satisfies a requirement for the attendance of 'parties'"; (2) lead trial counsel, Snyder, advised the Court he would be out of the country, and arranged for his partner and associate working the case to be present; and (3) this Court's Order "suggest[ed]" that the sanctions award was, "in part," triggered by Defendants' earlier counsel. [*Id.*]

Third, on June 20, 2012, the Court, Hon. George H. King presiding, ruled on the objection. Chief Judge King found that this Court had authority to issue the sanctions. [Dkt. No. 77 at 2.]

Chief Judge King also ruled that – while Defendants and their counsel did not claim an inadequate opportunity to be heard before this Court and was "generally [] of the view that [they] were given the opportunity to be heard" – a specific chance to be heard before any sanctions were imposed would provide this Court with a more robust record. [*Id.* at 3.] Chief Judge King vacated the sanctions, and remanded for further proceedings consistent with his order. [*Id.*]

Chief Judge King further noted that his order did not preclude this Court from issuing any such further orders regarding sanctions as it deems appropriate after considering whatever showing and arguments Defendants and their counsel may make. [*Id.*]

On July 10, 2012, Defendants and Defendants' counsel filed their response to the OSC, along with brief declarations from Snyder, Burnett, Smith, and Katherine Van Ryn. [Dkt. No. 85.] Van Ryn is a "litigation specialist" with Harco National Insurance Company, "insurer for defendant Pile Trucking, Inc., and the other defendants." [*Id.*, Van Ryn Decl. at ¶ 1.] There were no declarations by any of the Defendants.

///

///

3

## II.

## **DISCUSSION**

Defendants and their counsel assert sanctions are unwarranted for four reasons:

    1.    "It is custom and practice in personal injury cases that the presence of a defendant's insurance carrier satisfies a requirement for the attendance of "parties" at a settlement conference" [Dkt. No. 85 at 4];

    2.    "Neither [Burnett nor Smith were] ordered to attend the conference or had any other obligation to be present," and it "continues to be unclear" why the Court proposes to sanction them [*id*. at 5];

    3.    "Snyder advised the Court he would be out of the country on the scheduled date," and, not hearing from the Court earlier, "it is imminently reasonable to assume . . . that his personal absence was approved by the Court," particularly where he arranged for his partner and associate to be present [*id*. at 5-6]; and

    4.    "There appears to be no legitimate purpose for the [May 25th] Order," and "it could be argued that the Order for Sanctions has its root" in this Court's "original leniency" to Defendants' first counsel [*id*. at 6-7].

The Court addresses each argument in turn.

### A.

### **Defendants And Their Counsel Are Not At Liberty To Unilaterally Ignore Court Orders**

Defendants and their counsel first contend there is a purported "custom and practice" excusing the personal attendance of the parties as long as an insurance carrier representative appears at the settlement conference. Defendants and their counsel contend that this practice promotes settlement. Because, the generally "emotional" and "unsophisticated" insured is substituted with a seasoned representative with settlement authority within policy limits.

The argument is untenable, on multiple levels. The Court will not belabor all of the deficiencies, but will briefly underscore the more notable ones.

To start, Defendants' counsel's own mode of operating is neither here nor there when this Court's March 7 Order unambiguously directed the personal attendance of Defendants and, indeed, cautioned Defendants and their counsel about potential "sanctions" for failure to "strictly" comply with the Court's "instructions":

> **The parties and lead counsel shall strictly follow these instructions**. . . . The parties and their lead trial counsel shall appear for a second settlement conference . . . The parties and their lead trial counsel shall keep their schedule clear for the remaining part of the day. No party or counsel shall be excused absent leave from the Judge or until the settlement conference is adjourned. Violation of this policy may result in sanctions being imposed. . . . Counsel appearing without their clients (whether or not counsel purportedly have been given settlement authority) may result in sanctions being imposed.
>
> [*See* Dkt. No. 26 at 1-2 (emphasis in original).]

Defendants and their counsel are not at liberty to ignore definitive and specific court orders as they deem fit based upon their particular familiarities. If Defendants sought to be excused from personal attendance, the appropriate course was for Defendants to file a motion to that end. Defendants' counsel does not retain unilateral authority to disregard a court order, even if he or she believes it is erroneous. This basic principle has been long recognized. *Malave v. Nat'l Pension Fund for Hosp. & Health Care Emps.*, 1996 WL 175090, at *3 (S.D.N.Y. Apr. 15, 1996) (denying motion to vacate sanctions against attorney whose clients failed to attend settlement conference because "[e]ven assuming [plaintiffs] had valid reasons for not attending . . . , these excuses were not presented to [the judge] prior to the

1  conference") (emphasis in original), *aff'd*, 125 F.3d 844 (table), 1997 WL 589885, at
2  *1 (2d Cir. 1997); *see also Hamilton v. United States*, 2012 WL 2122161, at *3
3  (E.D.N.Y. June 12, 2012).

4        It also bears noting that any reliance on a purported "custom and practice"
5  was misplaced here.  Based upon prior history, Defendants and their counsel were on
6  notice that Defendants' personal attendance was mandatory.  By way of background,
7  the Court had set two settlement conferences in this action – an "early" settlement
8  conference and a "further" settlement conference.  The "early" settlement conference
9  occurred on December 19, 2011, approximately five months before the settlement
10 conference at issue in this OSC.  [Dkt. No. 12.]

11       At that "early" settlement conference, Defendants also failed to appear.  In a
12 written minute order, Defendants and their then-counsel were admonished for
13 disobeying the Court's directives at the "early" conference, specifically the failure of
14 Defendants to personally attend.  [*Id.*]  While Defendants' counsel at issue here
15 substituted in after the "early" settlement conference, the parties remained the same,
16 as did Defendants' carrier.

17       And with respect to successor counsel in any event, it was incumbent upon
18 them to review the procedural aspects of this action and to examine the court record
19 as well.  Indeed, during the further settlement conference, Defendants' counsel
20 (Burnett) conceded that "[w]e substituted into the case because of what happened on
21 the last settlement conference."  [Dkt. No. 67 at 6.]  Plainly put, Defendants and their
22 counsel were "well aware of what the court expected."  *G. Heileman Brewing Co.,*
23 *Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 655-56 (7th Cir. 1989) (upholding sanctions
24 against a party that violated a court order by failing to appear at a settlement
25 conference and emphasizing the action's past procedural history).

26       Even putting aside both of the above, Defendants' presence was required at
27 the settlement conference precisely because they are the integral participants in this
28 lawsuit.  For one thing, they are the ones who retain actual personal knowledge of

the events at issue.  Hence, during the settlement conference, and without revealing any confidential information here, it was evident that certain peculiar events (centered around Flynn's passenger during the incident and evidently the destruction of log books) could be addressed only through defendant Alvin Flynn and/or defendant Pile Trucking, Inc.  Yet, they were unavailable at the further settlement conference.[2/]  *See, e.g., Dunaway v. Estate of Aiken*, 2011 WL 6211228, at *2 (S.D. Ind. Dec. 14, 2011) ("[C]ourt-ordered settlement conferences are serious attempts to settle claims and are intended to convey information helpful and important to the ultimate decision makers.").

Now, Defendants and their counsel hype the fact that Van Ryn had "full, unlimited settlement authority up to the value of the insurance policy," and there was not then, nor has there been afterward, "a demand that exceeds policy limits." [Dkt. No. 85 at 4.]  Defendants and their counsel then assert that "thus, attendance by the defendants would have been – at best – absolutely unnecessary and inconsequential." [*Id.*]  To put it charitably, Defendants and their counsel overlook the full spectrum of exposure.

Barring any resolution short of trial, any ultimate judgment – in excess of the policy limits (and even perhaps within policy limits depending on the actual factual findings) – would likely be shouldered by one or more of the Defendants themselves (although Defendants may have something to say about that now).  And notwithstanding any of Plaintiffs' settlement demands, Plaintiffs' intended trial demands vastly exceeded the policy limits.  Plaintiff's statement of damages, filed

---

[2/] Flynn's failure to appear, and Defendants' counsel's duty to ensure his presence, is even more pronounced in light of the fact that the Court was forced to telephonically contact Flynn at the "early" settlement conference, and Defendants' counsel and carrier were aware, or should have been aware, about that fact. [Dkt. No. 67 at 9] ("Ms. Van Ryn: I just wanted to apologize, Your Honor, and say that I did know that you called Mr. Flynn.").

1 on May 25, 2011, stated that they sought $5,000,000 in general damages and
2 $1,500,000 in special damages. [Dkt. No. 1 at 33-34.] Defendants may find a
3 verdict in or near those amounts to be an unwelcome proposition and Defendants
4 may, in fact, consider them consequential. These facets of the litigation, along with
5 other tensions, were evident under the circumstances, and Defendants' participation
6 in the settlement conference was merited. *See, e.g.*, 14 COUCH ON INS. 3d § 203:13
7 (3d ed. 2011) ("The basis of the insurer's duty to settle within policy limits is the
8 insurer's exclusive control over settlement negotiations and defense of litigation.
9 While the insured may prefer to settle within policy limits and avoid the risk of trial,
10 the insurer may have an incentive to reject offers at or close to policy limits and
11 proceed to trial with the hope of a lower judgment or a verdict in its favor.").

12      Indeed, at the further settlement conference, the Court queried Defendants'
13 counsel (Burnett) on this aspect, namely, whether the carrier accepted responsibility
14 for a verdict in excess of the policy limits. Defendants' counsel first sidestepped the
15 issue, and indicated it was a consideration for the carrier. [Dkt. No. 67 at 8.] When
16 pressed, Defendants' counsel admitted that such a commitment had not been made.
17 Defendants' counsel continued to avoid the topic of trial exposure. He stated, "I
18 don't think I'm in the position to speak to that issue." [*Id.*] When asked whether
19 Defendants themselves would be liable, he admitted that he could not offer an
20 opinion because he had "a duty to both the defendants in this case and to the
21 insurance company as well." [*Id.*] One should remain hopeful that this action does
22 not now spurn off other lawsuits.

### B.
### Burnet And Smith Appeared On Behalf Of Defendants
### And Were To Comply With The Court's Order

26      Defendants and their counsel also contend that "neither [Burnett and Smith]
27 was ordered to attend the conference or had any other obligation to be present," and
28 "[s]imply put, they did not violate any of the Court's Orders in any way. . ." [Dkt.

1  No. 85 at 5.]  The argument is untenable.

2  Smith was an attorney of record at the time this Court issued its order of
3  March 7, 2012.  In fact, in a recent declaration submitted to the Court, Smith stated
4  he was the "primary handling attorney" on behalf of Defendants.[3/]  [*See* Dkt. No. 81,
5  Smith Decl. at ¶ 1.]  Moreover, Burnett, along with Smith, specifically appeared on
6  behalf of the Defendants at the further settlement conference:

8      Mr. Burnett:       Good morning, Your Honor.  Sean Burnett and
9                                   Greg Smith for the Defendants.
10 [*See* Dkt. No. 67 at 4.]

12 As well summed by one court, "[a] court's most fundamental expectations of
13 the attorneys who appear before it are to show up and be prepared" and "[t]he failure
14 to be properly prepared is one of things Rule 16(f) specifically identifies as the basis
15 for sanctions. . ."  *In re Syzmanksi*, 344 B.R. 891, 894 (Bankr. N.D. 2006); *see also*
16 Fed. R. Civ. P. 16.

17 Here, of course, Burnett and Smith were substantially unprepared because
18 they failed to ensure that Defendants accompanied them to the settlement
19 conference, as ordered by the Court.  And as previously noted by this Court, whether
20 it was intentional or unintentional is impertinent; sanctions may be imposed when
21 the parties and their counsel disobey a court order.  *See Lucas Auto. Eng'g, Inc. v.*
22 *Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001) (sanctions may be
23 imposed when the disobedience of a settlement conference order is intentional or
24 unintentional); *Los Altos El Granada Investors v. City of Capitola*, 2011 WL

---

[3/] The Court previously reduced the amount of sanctions against Smith because the Court believed that Smith "may have lacked supervisory responsibility in this case." [Dkt. No. 41 at 7.]  It seems Smith has already been fortuitous in these proceedings, albeit Defendants' counsel's credibility continues to suffer.

9

996108, at *2-3 (N.D. Cal. Mar. 21, 2011) ("It need not be shown that the party to be sanctioned was acting recklessly or in bad faith. Negligent failure to comply with Rule 16 justifies imposition of appropriate sanctions.") (citation omitted).

## C.
### Snyder Was Not "Implicitly" Excused By The Court

Defendants and their counsel next contend that Snyder "advised" the Court he would be out of the country before the settlement conference. [Dkt. No. 85 at 5.] If the Court found Snyder's "proposed course of action . . . unsatisfactory," then the Court should have issued "some directive." [*Id*. at 6.] But since Snyder did not hear anything from the Court, it was "imminently reasonable to assume" that Snyder's absence was excused. [*Id*.] This argument fails for a host of reasons.

Foremost, Snyder, as lead counsel, did not file any motion or any application. He simply filed a "declaration," stating he was "unable" to attend because of his "vacation plans." [Dkt. No. 29.] If Snyder desired affirmative relief – to be excused from the settlement conference as the Court's March 3 Order required – he should have filed a noticed motion consistent with this Court's Local Rules. It is not the Court's burden to re-order what it has already ordered, especially when Defendants' counsel ignores the proper procedure to that end as well.[4/]

Second, Snyder recognized in his "advisement" that sanctions would be the consequences. Any purported surprise by Snyder, or his fellow counsel, or Defendants, is without basis. As Snyder stated in his own declaration at the time, "I request the Court . . . to allow Mssrs. Burnett and Smith to attend in my stead

---

[4/] Defendants' counsel appears to have difficulty following this Court's rules generally when seeking affirmative relief. For instance, on or about January 20, 2012, when Snyder and his fellow counsel substituted into the action on behalf of Defendants, Defendants' new counsel's paralegal wrote a letter to the Court seeking a revised Scheduling and Case Management Order. [Dkt. Nos. 16-18.] This Court's Local Rules provide that letters are not permitted. *See* Local Rule 83-2.11.

1 *without sanctions* being imposed." [Dkt. No. 29 at ¶ 6 (emphasis added).]

2 Third, Snyder fails to recognize that, irrespective of whether his presence was
3 excused or not, which it was not, he further violated the Court's order to ensure that
4 his clients were present for the settlement conference. That alone is adequate
5 grounds to sanction Snyder as lead counsel.

6 Fourth, the substance of Snyder's declaration was disingenuous in any event.
7 In his declaration, Snyder stated he was to be on a European vacation from May 9 to
8 May 24, 2012, and thus could not attend the follow-up settlement conference. [Dkt.
9 No. 29.] He stated that his wife made final arrangements for this vacation – to
10 encompass the May 10, 2012 further settlement conference date – on March 8 or 9,
11 2012. [*Id*. at ¶ 2.] He did not specify the precise date of the booking and payment.
12 Nor did Snyder submit any documentation to this effect. Nor has he ever since.
13 Snyder then explained that he did not receive the Court's Order of Wednesday,
14 March 7, 2012 until Monday, March 12, 2012 because on March 7, 2012, his fifth
15 grandchild was born, and he spent "much of the day" out of the office. [*Id*. at ¶ 4.]

16 Snyder never explains why he did not review the Order on March 8th or
17 March 9th. Equally important, however, Snyder did not address that the follow-up
18 settlement conference date was solidified through the Court's Courtroom Deputy
19 Clerk *before* the March 7, 2012 Order itself, and lead counsel was already on notice
20 from the Court's prior settlement order that his presence was mandatory.

## D.
## Defendants And Their Counsel's Wrongful Conduct
## Cannot Stand Without Consequences

24 Defendants and their counsel lastly contend "there appears to be no clear
25 purpose and no legitimate basis for the contemplated sanctions" because the Court
26 did actually hold a settlement conference and, in their opinion, the conference was
27 still "quite useful." [Dkt. No. 85 at 6-7.] Defendants and their counsel state that,
28 "[i]n many ways, it could be argued" that this Court's imposition of sanctions has its

"root" in the "original leniency" extended to Defendants' prior counsel. [*Id*. at 6.] Defendants and their counsel continue to be mistaken.

The Court proceeded with the settlement conference because Plaintiffs and their lead counsel appeared, along with a Spanish-speaking interpreter for Plaintiffs. The Court proceeded with the settlement conference because the conference had been on calendar for two months. The Court proceeded with the settlement conference because "court-ordered settlement conferences are serious attempts to settle claims" and "[t]he parties who attend settlement conferences owe it to each other and the court to take these conferences seriously." *Dunaway*, 2011 WL 6211228, at *2.

The fact that Plaintiffs and the Court shouldered their responsibilities does not excuse Defendants and Defendants' counsel from honoring their own duties. And while Defendants and Defendants' counsel may believe the conference remained "quite useful," the settlement conference suffered as a result of Defendants and their counsel's violations of the Court's order, as described above. Defendants and their counsel's wrongful conduct cannot stand without consequences.

### E.
### The Court Contemplated Additional Sanctions Against Defendants' Counsel

In its original order imposing sanctions, the Court noted its displeasure in censuring any party or his, her, or its counsel, and underscored the rarity of doing so by this Court. Notwithstanding that reluctance, the Court felt forced to impose sanctions here. The response to the OSC not only reinforces that belief, but suggests that the Court may have been too indulgent in its initial assessment.

For instance, in its original order, the Court was mindful that Defendants and their counsel may not have had ill intentions in their violations. But now, Defendants and their counsel argue that they merely followed their own "custom and practice," rather than a plain court order, which suggests the wrongful conduct was

willful, not inadvertent. [Dkt. No. 85 at 4.] Defendants and their counsel argue that Defendants' presence was "absolutely unnecessary and inconsequential," even though certain facts needed to be fleshed out at the conference and, of course, there was the potential for an excess judgment. [*Id.*]

It does not end there. Defendants and their counsel argue that Burnett and Smith "did not violate any of the Court's orders in any way," when both specifically appeared on behalf of Defendants at the further settlement conference, and Smith was the "primary handling attorney." [*Id.* at 5; Dkt. No. 81, Smith Decl. at ¶1.] Defendants and their counsel argue that the Court "implicitly" excused Snyder because he filed a short, hollow declaration, ignoring, among other things, that Snyder himself asked – in that same declaration – that the Court not impose "sanctions" because of his conduct. [Dkt. No. 85 at 5; Dkt. No. 29 at ¶ 6.] Defendants and their counsel argue there is "no legitimate basis" for sanctions, overlooking that they, in fact, violated a Court order. [Dkt. No. 85 at 7.]

In sum, Defendants and their counsel's response to the OSC is markedly less than one would have expected from officers of the court. In this vein, the Court contemplated whether the amount of sanctions should be increased or whether certain of Defendants' counsel should be required to self-report to the State Bar to determine whether counsel has violated the provisions of the California Rules of Professional Conduct and the State Bar Act. *See, e.g., United States v. Kan Wen Chong*, 2010 WL 4175764, at *3 (N.D. Cal. Oct. 20, 2010). At this juncture, the Court shall refrain from doing so. As it stands now, the Court has fashioned a sufficient remedy in light of Defendants and their counsel's violations given all the circumstances. But this Court does take this opportunity to encourage Defendants and their counsel to, going forward, hold themselves to the highest standards of candor and integrity when before the United States District Court.

**III.**

**CONCLUSION**

The Court exercises its sanctioning authority under Fed. R. Civ. P. 16. *See also Ayers v. City of Richmond*, 895 F.2d 1267, 1269 (9th Cir. 1990); *Ford v. Alfaro*, 785 F.2d 835, 837 (9th Cir. 1986) (court did not question magistrate judge's authority to issue Rule 16 sanctions); *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) (authority to sanction under Fed. R. Civ. P. 37); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) (authority to sanction under Fed. R. Civ. P. 11).

The Court imposes sanctions in the following amounts:

1. Sanctions in the amount of $1,500.00 each as to Defendant Alvin Flynn and Defendant Pile Trucking, Inc.

2. Sanctions in the amount of $3,000.00 as to Barry C. Snyder.

3. Sanctions in the amount of $1,500.00 as to Sean R. Burnett.

4. Sanctions in the amount of $500.00 as to Gregory M. Smith.

While there are technically three Defendants, it appears that Defendant "Earl Pile Trucking" may not be an actual entity and, therefore, no sanctions are imposed against "Pile Trucking" separately, so as not to impose double harm on any Defendant.

With respect to Defendants' counsel, the Court calibrated the specific amount based upon their proportionate culpability, although there remains some ambiguity with respect to Smith's precise role (which appears to be greater than originally thought). Barry C. Synder merits $3,000.00, at a minimum, as lead counsel. Sean R. Burnett merits $1,500.00. Smith merits, at a minimum, $500.00.

Plaintiffs and their counsel are granted leave to file an application, sufficiently supported with evidence, seeking a recoupment of the fees and costs, including attorneys' fees and expert costs, that Plaintiffs and their counsel incurred for their preparation, attendance, and participation in the settlement conference at issue. The parties should meet and confer, fully and diligently, on this application prior to its

filing.

DATED: October 3, 2012

_____
Hon. Jay C. Gandhi
United States Magistrate Judge